KILEY v. LEE CANNING CO.

(Supreme Court, Appellate Division, Third Department. May 3, 1905.)

1. SALES—DELIVERY—DIRECTIONS OF BUYER.

Plaintiff sold defendant one acre of each of two varieties of peas, by a contract providing that the peas should be delivered when called for by defendant's agent. The agent verbally directed the delivery of the peas on the 1st and 2d days of a certain month; handing plaintiff at the same time two written slips, one of which directed the delivery of one variety of the peas upon the 1st of the month, and the delivery of the other variety on the 2d. *Held*, that plaintiff had a right to rely upon the verbal order, unless his attention was specifically called to the fact that that order was intended to be changed by the written ones, and hence failure to deliver all of the variety called for by the first written order on the 1st day of the month was no breach of the contract, if all of both varieties were delivered on the 1st and 2d.

2. SAME—DATE OF DELIVERY—EVIDENCE.

On an issue whether a load of peas was delivered by plaintiff to defendant upon the 2d or 5th day of a certain month, the admission of evidence that defendant's son, who, it was conceded, hauled the load, asked his employer to be excused on the 2d day of the month for the purpose of helping his father, was harmless.

3. SAME.

Testimony by the employer that the son did not work for him on the 2d, and did work for him on the 5th, was competent.

4. SAME—TENDER—WAIVER.

Where a purchaser of personalty rejected part of it when tendered for delivery, stating that it did not care for more, further tender on the part of the seller was excused.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 363.]

5. SAME—MARKET VALUE—EVIDENCE—SUFFICIENCY.

In an action for damages for refusal by the buyer to accept and pay for certain peas, evidence of the market value of the peas after rejection *held* sufficient to justify a verdict for plaintiff under an instruction that the measure of damages was the difference between the contract price and the market value.

Appeal from Madison County Court.

Action by Maurice Kiley against the Lee Canning Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

The defendant is a domestic corporation engaged in the canning business at Hamilton, N. Y. Upon March 24, 1902, the parties to this action made a contract whereby the plaintiff was to harvest and deliver to the defendant

at its Hamilton factory one acre of Prince of Wales peas and one acre of · Market Garden peas. The defendant was to pay $1.75 per 100 pounds for shelled peas, free of waste matter and thistles. The contract then provides: "That the peas should be delivered in the vines, free from thistle buds, on the same day they are cut, unless otherwise agreed, and any mixed with heated, discolored pods, hard ripened peas, or of a different variety will be rejected. The pods must be fresh and green and the peas tender and in perfect condition for canning purposes, and in all respects, the quality must be acceptable to second party [defendant]. The second party [defendant] assumes entire responsibility of inspecting and determining when said peas are to be cut, it being the duty of the first party [plaintiff] to cut and deliver the same, the day, second party's [defendant's] roadman notifies first party [plaintiff] they should be cut. * * * The second party [defendant] has the right to reject peas when not delivered in prime condition for canning purposes. * * * All claims for allowance for products must be made the same day that they are delivered." The contract also contained provisions in reference to the payment for the seed and fertilizer furnished by the defendant. In 1902 one Edward Sherill was the defendant's roadman, and it was his duty to inspect the garden crop of peas and direct their delivery, or, as it was called, order them in. Upon July 31, 1902, he saw the plaintiff, and ordered the peas to be brought in upon the 1st and 2d of August. Upon August 1st plaintiff cut a load of peas and started to the defendant's factory, but broke down upon the way, and, by reason of a rainstorm, did not reach the factory until between 3 and 4 o'clock in the afternoon. The load weighed 410 pounds, and was accepted by the defendant. The peas delivered were Prince of Wales peas. The next load of peas were rejected because they were too old, hard, and not marketable, and the plaintiff was informed that the defendant would take no more of the peas. It was conceded that the defendant owed the plaintiff $7.12 for Alaska peas, and $7.18 for the 410 pounds of Prince of Wales peas delivered upon August 1st; that the plaintiff was indebted to the defendant in the sum of $41.90 for fertilizer, seed peas, and other things; and that E. D. Sherill was the defendant's roadman for the season of 1902. This action is brought to recover the contract price of the peas wrongfully rejected, as the plaintiff claims, by the defendant. The action was first brought in Justice's Court, resulting in a judgment for the plaintiff for the sum of $85.10. Defendant appealed to the County Court for a new trial, in which court the plaintiff recovered a verdict for $77.64. From the judgment entered upon this verdict, this appeal is taken. Further facts appear in the opinion.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Dayton F. Smith (C. A. Hitchcock, of counsel), for appellant.
E. W. Cushman, for respondent.

SMITH, J. By the terms of the contract, the defendant's agent was the sole judge of the time when the peas were to be cut and delivered. The learned county judge construed the contract to authorize a rejection of the peas by the defendant if they were not in all respects suitable for canning, under the terms of the contract, unless they were rendered unsuitable by the fault of the defendant's agent in failing to direct their delivery in proper season. The contract is a hard one for the plaintiff. The defendant can make no complaint if the plaintiff be required to conform strictly to its terms, except for the fault of its own agent. By the verdict of the jury it has been determined that the condition of the peas was defective solely by reason of the delay in the order for delivery by defendant's agent.

The order for the delivery of the peas was given by Sherill, the defendant's agent, upon the 31st day of July. The plaintiff swears that he was told to deliver them upon the 1st or 2d of August. Sherill, the agent, swears that he told Kiley that it would do to keep the peas until Monday, but he told him he was to deliver his peas in the next two days—Friday and Saturday. At the same time he delivered to the plaintiff two slips of paper, upon one of which was stated the name of the grower as Maurice Kiley, the variety of the peas as Prince of Wales, the acreage as one acre, when ordered in, "August first"; upon the other of which was the name of the grower as Maurice Kiley, the variety of the peas as Market Garden, the acreage as one acre, when ordered in, "August second." Both these slips of paper were signed by Sherill. Defendant contends that at least no recovery can be had for the Prince of Wales peas, except for the single load delivered upon August 1st, because they were not delivered upon the day when they were ordered according to the written slip. The plaintiff, when he received the slips, did not read them, put them in his pocket, and relied upon the verbal direction of the agent as to the time of delivery, according to which he had two days—August 1st and 2d—for the delivery of all the peas. The learned county judge charged the jury, if the plaintiff understood that the peas might be delivered either upon the 1st or the 2d, and if Sherill had reason to expect that the plaintiff would rely upon the verbal direction thus given, and not be governed and controlled wholly by the written notice which he had served or was about to serve, that the plaintiff had the two days within which to cut and deliver the two acres of peas. There is no specification in the contract that the time of the cutting shall be specified by written order of the defendant. Having given explicit direction that they were to be cut and delivered the 1st and the 2d of the month, the plaintiff had the legal right to rely upon that order unless his attention was specifically called to the fact that that order was intended to be changed by the written paper given to him. Under the evidence, it appears that both crops were equally matured, and that it was immaterial which should be first delivered. The written papers so delivered by the agent made no legal change in the verbal directions which had been given, and which were relied upon. It would seem to be immaterial whether or not Sherill understood that the plaintiff relied upon those verbal directions. The defendant could ask no more favorable charge upon this question than was given by the court.

The principal contention upon the facts arose upon the time of the delivery of the second load, and the condemnation of the peas by the defendant. The evidence of the plaintiff is to the effect that such delivery was upon the 2d of August, the day after the first load was delivered. The defendant contends that such delivery was not until the 5th of August, which, it is claimed, accounts for the fact that the peas were not then in proper condition for canning. It can hardly be claimed that the evidence did not present a fair question of fact for the determination of the jury. With this sharp question of fact thus presented, defendant complains that the court

allowed the plaintiff to prove by one Gilmartin, for whom the plaintiff's son John was working at or about that time, that upon the 2d day of August the plaintiff's son asked to be relieved "for the purpose of helping his father." It is not questioned that the second load of peas was drawn by the son John. The sole question is as to the date upon which it was drawn. Gilmartin swore that John was working for him at the time, and that he excused John from work upon the 2d of August, and that upon the 5th of August, the day upon which the defendant claims the load was delivered, John was working for him under his direction. With the fact conceded that the second load was drawn by John, and the only fact contested the date upon which it was drawn, the evidence of John's request to be excused for the purpose of helping his father could harm nothing. The evidence of Gilmartin that he was in fact excused and did not work for him upon the 2d, and that he did work for him upon the 5th, was clearly competent evidence bearing upon the question when the second load was delivered.

Upon the attempted delivery of the second load by John the peas were rejected, and the statement made by defendant's agent that they cared for no more peas. This excused further tender on the part of the plaintiff. Word was sent to the plaintiff to come down that afternoon, and the defendant's manager would settle with him. He went to the defendant's factory. The defendant's manager pleaded lack of time, and postponed the settlement, which was afterwards postponed from time to time by the defendant until plaintiff was compelled to bring this action.

The rule of damages as stated by the court was the difference between the contract price of the peas and their market value. The defendant contends that there was no evidence of market value, and therefore there was no evidence upon which any proper verdict could have been reached under the rule of damages stated. In the testimony of one of the defendant's witnesses it was stated that the only market for old or dried peas was with the defendant. The plaintiff, however, swore that the fair market value of those peas, as they were thus left upon his hands, was about 50 cents a bushel. This evidence was submitted to the jury, and they have found, upon balancing the accounts, and allowing a market price for the peas at 50 cents a bushel, that the plaintiff was entitled to a verdict of $77.64. This verdict, we think, is based upon sufficient evidence.

Defendant further insists that the learned county judge committed error in admitting evidence to which objection was duly made. While some of the evidence to which the defendant objected was probably irrelevant, and perhaps improperly admitted, upon a careful examination of the evidence, and in view of the issue finally submitted to the jury, we are satisfied that such evidence was without influence in the determination of the verdict, and that the receipt of such evidence constituted no error for which this judgment should be reversed.

The judgment should therefore be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.